IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOHNE BURYCHKA,<br><br>Plaintiff,<br><br>v.<br><br>BEACHCOMBER CAMPGROUND, INC.,<br><br>Defendant. | Civil No. 17-3627(RMB/KMW)<br><br>**OPINION** |

**APPEARANCES:**

ROSENBAUM & ASSOCIATES, P.C.
By: John F. Hanahan, Esq.
5 Split Rock Drive
Cherry Hill, New Jersey 08003
    Counsel for Plaintiff Johne Burychka

CONNOR, WEBER & OBERLIES, P.C.
By: Michael S. Mikulski, II, Esq.; Christopher P. Lagay, Esq.
304 Harper Drive, Suite 201
Moorestown, New Jersey 08057
    Counsel for Defendant Beachcomber Campground, Inc.

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff Johne Burychka ("Plaintiff") brings this personal injury action against Defendant Beachcomber Campground, Inc. ("Defendant") based on injuries sustained when Plaintiff allegedly slipped and fell in a men's restroom adjacent to the pool at Defendant's campground.  On June 14, 2019, this Court issued an Opinion and Order [Dkt. Nos. 37, 38] denying Defendant's Motion for Summary Judgment (the "First MSJ")[Dkt. No. 32], without prejudice.  This matter now comes before the Court upon Defendant's Renewed Motion for Summary Judgment (the "Second MSJ")[Dkt. No. 39].  For the reasons set forth herein, Defendant's Renewed Motion for Summary Judgment will be **DENIED** and Trial will be **SCHEDULED** to commence on Tuesday, May 5, 2020 at 10:00am.

I.  FACTUAL AND PROCEDURAL BACKGROUND

As recounted in this Court's prior Opinion, Plaintiff arrived at Defendant's campground in Cape May, New Jersey on the morning of July 31, 2016, intending to spend a few days with his brother and his brother's wife, who were members of the campground.  Later that morning, Plaintiff and his brother spent about an hour lounging by the pool.  At approximately 12:30 p.m., Plaintiff went to use the bathroom facilities adjacent to the pool.  Upon entering the men's restroom, Plaintiff alleges that he slipped and fell on a wet floor while proceeding towards the

2

urinals.  As a result of his fall, Plaintiff sustained a hip fracture that ultimately required surgery.

Plaintiff testified at his deposition that he did not notice any "standing water" on the floor when he entered the bathroom, but that after his fall, he observed that the tile floor was visibly wet "as if the floor was recently mopped." See Burychka Deposition [Dkt. No. 39-5], at 31:11-21.  Plaintiff explained that in addition to observing that the floor was wet, the side of his body that hit the floor, including his bathing suit, became wet from moisture from the floor.  Id. at 40:4-10.

After his fall, Plaintiff was assisted by an unidentified father and son who found Plaintiff on the bathroom floor. Thereafter, he received first aid from male Beachcomber security guard and a female lifeguard, both of whom allegedly filled out written reports about the incident.  Plaintiff initially declined an ambulance, but the security guard eventually called an ambulance after Plaintiff's pain did not improve after a half hour of icing his hip.  Plaintiff was transported to Cape Regional Medical Center, where he was admitted and diagnosed with fracture to his left hip, which required surgery.

On May 22, 2017, Plaintiff commenced this action against Defendant, arguing that Defendant breached its duty of care by failing to maintain the bathroom floor in a safe condition.  On June 14, 2019, this Court denied Defendant's First MSJ, without

3

prejudice, holding that Plaintiff did not need to prove that Defendant had constructive notice of the dangerous floor conditions because the "mode-of-operation" doctrine applied to this case. Because the parties had not briefed the mode-of-operation doctrine in the First MSJ, the Court permitted Defendant to renew its motion and point to evidence in the record establishing that Defendant exercised reasonable care to prevent wet floors in the pool-area bathrooms. Now, this matter comes before the Court upon Defendant's Renewed Motion for Summary Judgment.

**II. <u>LEGAL STANDARD</u>**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." <u>Gonzalez v. Sec'y of Dept of Homeland Sec.</u>, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. <u>Id.</u>

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. <u>Melrose, Inc. v. City of Pittsburgh</u>, 613

4

F.3d 380, 387 (3d Cir. 2010).  However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Walsh v. Krantz, 386 F.App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009).  "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id.  In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord. Jackson v. Danberg, 594

F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)("[S]peculation and conjecture may not defeat summary judgment."). Moreover, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence does not need to be in admissible form at the time of summary judgment. FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

**III. ANALYSIS**

In the June 14, 2019 Opinion (the "First MSJ Opinion")[Dkt. No. 37], the Court found that the "mode-of-operation" doctrine applied to the facts in this case, creating an inference of negligence against Defendant which can only be rebutted through a showing that Defendant took reasonably prudent measures to prevent the risks posed by wet floors in a bathroom located adjacent to a pool. Now, in the Second MSJ, Defendant argues that the Court incorrectly applied the mode-of-operation doctrine and that, even if the mode-of-operation doctrines applies, that Defendant has proven that it took reasonably prudent steps to ensure the cleanliness and safety of the bathroom facilities. The Court disagrees with Defendant.

### A. The "Mode-of-Operation" Doctrine

As explained in the Court's First MSJ Opinion, the mode-of-operation rule is a "special application of foreseeability principles," developed in response to the inherent risks associated with "self-service" businesses. See Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 262 (2015). Generally, the self-service setting has been described as an environment "in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk." Id.

Under the mode-of-operation doctrine, a plaintiff is relieved of the obligation to prove actual or constructive notice of a dangerous condition when, "as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003).

As such, the "mode-of-operation" principle "substantially alters" the premises liability standard by "giving rise to a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice." See Lenherr v. Morey Org., Inc., 153 F.Supp.3d 662, 665 (D.N.J. 2015)(applying the mode-of-operation

7

principle where plaintiff slipped on a misplaced mat at a water park). After a finding that the mode-of-operation doctrine applies, the inference of negligence shifts the burden to the defendant, who can "negate the inference by submitting evidence of due care." Nisivoccia, 175 N.J. at 564. This means that the defendant can avoid liability by showing that it did "all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed." Id. at 565.

### B. *Applicability of the "Mode-of-Operation" Doctrine*

First, Defendant argues that the mode-of-operation principle is not applicable to the facts in this case. In doing so, Defendant effectively moves for reconsideration of the Court's First MSJ Opinion, which held as follows:

> After reviewing the facts, as presented in the parties' briefing, this Court finds that the mode-of-operation doctrine applies to the bathroom and pool area at Defendant's campground. At first glance, Defendant's campground may not stand out as an obvious "self-service" business. However, any guest's independent use of a business's pool is inherently self-service. Although lifeguards may be stationed nearby to observe or intervene, guests generally enter and exit a pool without assistance. Naturally, these guests have wet clothing when they exit the pool and will track water with them to facilities positioned nearby for guest use. Common sense dictates that there is a substantial likelihood that guests will track water into bathrooms positioned near a pool, resulting in slippery and wet floors. In this instance, it is irrelevant how the bathroom's tile floor got wet (either by a guest tracking in water or by an employee mopping the floor). Dangerous conditions due to slippery and wet floors are reasonably likely to occur in a bathroom near a pool.

8

> Accordingly, this Court finds that Plaintiff is entitled to an inference of negligence and is relieved of the obligation to prove that Defendant had actual or constructive notice of the dangerous condition that caused Plaintiff's accident. It is now Defendant's burden "to produce proof of performance of their duty of due care commensurate with the kind and nature of their business," including "proof of the measures they took to deal with the probability that" guests at the pool could track water into the bathrooms and create a slip hazard. See Lenherr, 153 F.Supp.3d at 668 (internal citations omitted).

First MSJ Opinion, at 8-10.

In challenging this holding, Defendant argues that the Court's application of the mode-of-operations doctrine was a reversible legal error because "the mode of operations doctrine has never been expanded beyond the self-serve setting, in which customers independently handle merchandise without assistance of employees or may come into direct contact with product displays, shelving, or packaging." Second MSJ [Dkt. No. 39-2], at 10.

In support of this argument, Defendant cites to Prioleau, in which the New Jersey Supreme Court held that the mode-of-operation rule did not apply when a customer slipped on her way to the restroom at a fast food restaurant. In Prioleau, there was evidence that the floor may have been slippery because employees had tracked grease from the kitchen or because customers may have tracked water from outdoors on a rainy evening. See Prioleau, 223 N.J. at 264. Under those

9

circumstances, the court aptly noted that grease from cooking and water from outdoors had nothing to do with any "self-service" aspect of the fast food establishment's business model. Id. Indeed, neither employees cooking with grease nor guests tracking water in from outside the restaurant involves any self-service element. However, the facts before this Court are quite different, as Beachcomber is a summer resort, in which allowing guests open access to pool area and the appropriate bathhouse facilities (which include showers) is most certainly part of the business model.

Defendant also argues that the mode-of-operation doctrine does not apply because Plaintiff was not actively engaged in a self-service activity at the time of his injury. On this point, Defendant cites to Lenherr, in which a guest at a water park tripped over a misplaced flotation device while carrying a double tube to another attraction. See Lenherr, 153 F.Supp.3d at 667. Defendant notes that the court in Lenherr stated "that a water park poses a greater risk of injury to its patrons than another type of business simply because of the inherent nature of the business is not enough, by itself, to impose the mode-of-operation doctrine... like in Prioleau, if plaintiff fell in the area leading to the restroom, rather than while engaging in self-

service activities, the analysis would be very different." Id. at 667-668.

Based on the language from Lenherr, Defendant argues that there is no nexus between Plaintiff's injury and any self-service aspect of Defendant's business. Notably, Defendant argues that Plaintiff had not even gone in the pool before entering the bathroom "and thus, not availed himself of any self-service activity." See Second MSJ, at 11. The Court disagrees with this assessment.

The Court rejects the notion that a plaintiff must be "actively engaged" in the self-service aspect of the business to benefit from the mode-of-operation principle. Under the interpretation proposed by Defendant, the mode-of-operation doctrine would not, for example, apply to a customer who slipped on a restaurant's wet floor, caused by spillage from a self-service soda fountain, if that customer was not using the soda fountain. Such a result would be absurd. In this Court's view, the mode-of-operation principle does not require that individual be actively engaged in a self-service activity when they were injured, rather it requires that the individual was injured due to a risk created by a self-service aspect of the business.

In this case, there were two distinctly self-service aspects of Defendant's business that could have caused wet floors in the bathhouse: (1) the pool and lake directly adjacent to the

bathroom; and (2) the availability of public showers directly within the bathroom. Given the proximity to the pool and the lake, there is a reasonable probability that guests will track water onto the floor. There is also a strong likelihood guests who use one of the publicly available showers will track water across the bathroom, leaving the floor wet for other guests. As such, the Court stands by its previous determination that Plaintiff is entitled to an inference of negligence against Defendant under the mode-of-operation doctrine.

### C. *Defendant's Alleged Exercise of Due Care*

Next, Defendant argues that it even if the mode-of-operation doctrine applies, that Defendant has demonstrated that the campground exercised reasonable care in maintaining the safety of the bathroom floors. In support of this assertion, Defendant references the measures set forth by Ken Gomez, one of the campground's owners, in his deposition, where he explained that the bathrooms are generally inspected approximately five times per day and are also occasionally cleaned with hot water and then a dry mop, with "wet floor" caution signs displayed after mopping.

Given that this Court has applied the mode-of-operation doctrine, it is not the Plaintiff's burden to establish negligence, rather the burden is on Defendant to demonstrate that

12

it did "all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed." Nisivoccia, 175 N.J. at 565. Whether Defendant's measures were enough is a question for a jury. Indeed, a reasonable jury could also find that Defendant failed to take reasonable measures to prevent slips because the bathroom had tile floors, no permanent warning signs about wet floors, and no logs were kept of daily inspections or cleanings. The Court cannot resolve this disputed issue of material fact.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment will be **DENIED** and Trial will be **SCHEDULED** to commence on Tuesday, May 5, 2020 at 10:00am. An appropriate Order shall issue on this date.

DATED: January 31, 2020

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        UNITED STATES DISTRICT JUDGE